Good morning, Your Honors, and may it please the Court. I'm David Michael. I represent the claimant, Oak Porcelli, in this matter. The defendant, Currency, is a defendant. I think the best way to approach this in the time we have is I want to discuss three things. One is Article III standing, compliance with discovery, the Rule G-6, and my client's Fourth Child. I think there's no dispute about the procedures, the arrest, the stop, the seizure of the money, and that's something that I want to get past and just get into the legal issues. But I want to make sure that I always get reminded, and I believe the Court should get reminded of that, that this is a forfeiture proceeding, and it's done pursuant to CAFRA Rule G, and even it existed before CAFRA in 2000, that all the rules on forfeiture cases are, should be strictly construed against the government. And that's what the Supreme Court said way back when. Forfeitures are disfavored, and forfeiture laws are strictly construed against the government. And I believe that we always have to keep an eye on that when we discuss any of the issues that are involved. Let me just ask you a kind of more high-level question, which is just how you think these proceedings are supposed to unfold in the district court. So, you know, your client had a verified statement saying he owned this cash that was found in the vehicle. You got some interrogatory responses. You didn't respond to everything. You did respond to some things. What's supposed to happen? How do you think this should have gone in terms of the sequencing of these issues about ownership and then the motion to suppress? Well, the first issue, I think, is to establish Article III standing. I think that's the primary concern that is required in any of these forfeiture proceedings. And it's really an important issue, and a lot of people fail Article III standing. But I think all the courts are uniform that to establish Article III standing, all you have to have is the property is seized from your possession and that you claim ownership. And you judicially claim it and you administratively claim ownership of that property. All the circuits, the Ninth Circuit, the Eighth Circuit, the Seventh Circuit, the Sixth Circuit, have all... I mean, Article III standing for what? You know, to proceed in the forfeiture? I mean, this is a weird...standing is being used in a weird sense here because it can mean your ability to keep litigating a claim. It also can mean, do you have a right to this? And I think that's where the issue is here, is that, you know, what is the basis for saying your client has a right to the money? A legal right. Well, I think that's something that the court has to decide. But in order for the client to be present in court and to assert his...the issues, he has to first establish this Article III standing. But Article III standing is not a heavy burden. It's easy to meet. If the property is seized from your possession and you file all the appropriate claims for the property, both administrative and judicial, then you have, according to the courts that have ever decided that issue of Article III standing, you have Article III standing. Okay. So let's assume that you have shown Article III standing at least at this stage of the proceedings. What was supposed to happen next? Well, there are certain rules. Obviously, there are things that can happen. You can have a motion to suppress, heard in forfeiture proceeding, and you can proceed with discovery. There is a Rule G-6 that allows the government to initiate discovery and certain types of interrogatories and requests under the forfeiture statutes, under CAFRA, the new CAFRA statutes. And that purpose of the Rule G-6, which I think is abused in many cases, the only purpose for Rule G-6 inquiries are to establish Article III standing, to make sure that whoever is making a claim for the property has Article III standing. And that's what I think is the limited purposes of Rule G-6, and I think that the courts support that. As a matter of fact, I think if... Okay. But let's just assume you're right about that. Let's assume that either you satisfied Article III standing at this stage because of this sworn statement, the interrogatory responses, then what's supposed to happen? Then there's a Rule G-8, and Rule G-8 allows a claimant to seek to suppress the res that was seized. It's a motion to suppress, typical. It's what criminal defendants have a right to, and it's been codified in CAFRA that a claimant can proceed with a motion to suppress, if he's got standing, of course. But generally, the person who's making the claim has standing because when they claim ownership of the property, it's either seized from their possession or seized from their bank account or seized from their home, wherever it is. A vehicle, a lot of this stuff is vehicle interdiction because there's a program of vehicle interdiction that law enforcement practices in this country. So he can file a motion to suppress, and there's a rule that provides for that. It says any person who's faced a Fourth Amendment issue can file a motion to suppress, and that's what Mr. — Now, was the district court required to do that, or could the district court have just held further proceedings on your client's ownership? In other words, here, I mean, I think there's a legitimate question as to how your client owned this huge amount of money that was just found packed in the car on a highway, right? And so he claims it was based on his work in the movie industry. Should we not have further proceedings on that first just to pressure test that, discovery and otherwise? Well, at some point in time, maybe, but the Fourth Amendment is an important consideration in forfeiture litigation, and I've litigated many, many Fourth Amendment issues in my history with forfeiture litigation. It's a right that any defendant has in a criminal case, and it's a codified right that a claimant has in a forfeiture proceeding. It's right there in the rule, Rule GA. But what tells us — I'm thinking about the sequence of this in the district court. What tells us how the district court is supposed to proceed here, in which order? The motion to suppress or these lingering questions about ownership? I think that the rules say that the government can do a limited inquiry prior to any determination of a motion to suppress, and that limited inquiry is established in the rules, Rule G6. What is that limited inquiry? The limited inquiry is only to determine Article III standing. That's the purpose of it, and that's why that rule exists, because anybody can make a claim, judicially or administratively, and the government should have a right to ferret out false claims, claims that are not rooted in Article III. That's what it's mainly about. That's all it's about. So we've given the government — when CAFR was written, it gave the government the ability to ferret out claims that don't have any basis in law, or in fact, actually. So it can ferret out people that don't have Article III standing, and that's legitimate. I have no problem with Rule G6 special interrogatories. The problem is that some district courts, I have to admit, have allowed the government to turn a Rule G6 special interrogatory into general discovery and ask the claimant everything about where the money came from, who are you, where did you get it, what your defense is, what did you do, and we resisted that. Could the district court have said, you know, let's have a phased discovery approach to this. Let's first have discovery on the question of whether Mr. Porcelli owns this cash. He has stated a prima facie claim for that, let's say. But we need to have document discovery, more interrogatories outside of the special rules. Let's resolve that question first, and then if we need to, we'll get to the motion to suppress. Could the district court have done that? No. I don't think that the district court should do that, and I don't think that the district court can do that. A motion to suppress is a critical part of the forfeiture proceedings, and even before CAFRA, I mean, I litigated a case six years before CAFRA in the 9th Circuit, and motion to suppress was something you have a right to, because unless you litigate a motion to suppress, you will never know what evidence is admissible in a forfeiture proceeding, and that's critical, and it's the Fourth Amendment. So the way CAFRA was created, it allows the government to make any inquiry it wants with the Rule G6 special interrogatories to ferret out people who don't have Article III standing. But Kent, I understand you're saying you met Article III standing at this stage by submitting a declaration saying it's mine, but we can always assess Article III standing at any stage of the case, and the government may challenge Article III standing at summary judgment, or even at trial or after trial. So why can't they use Rule G6 to get that information even at the early stage? Because if you look at the text of the rule, it does say it's limited to claimant's identity in relationship to the property, but it says it can be served any time after the claim is filed and before discovery is closed. So it seems like G6 you can serve at any time, even at late stages of the cases, or early, as long as it's related to standing. So if the government here obviously doesn't believe the declaration that your client submitted, so why can't the government serve this? And even if you met standing at this pleading stage, they can get discovery because they may challenge it at summary judgment. Well, there is some important things to determine in Rule G6 special interrogatories. We agree. You have to establish that that person has what's called Article III standing, and there's a whole body of law that determines what Article III standing is and what you need to do to comply with Article III standing. It's not just some vague concept. And Article III standing has been determined in this circuit and in about five other circuits that have addressed the issue that if you have property that's seized from your possession and you claim ownership of that property, that's Article III standing. It's not demanding. At the pleading stage, but you can always challenge Article III standing at any time. Well, at summary judgment, you mean? Yeah, sure, or after trial, during trial, any time. Yeah, well, this circuit has said that you have Article III standing all the way up to summary judgment. But even so, and that may be true, but right after he is able to establish that he has Article III standing, which all the courts have said he has initially, according to the, in regards to Rule G-6, then Rule G-8 says that he has a right to file and hear a motion to suppress. The Fourth Amendment applies to civil forfeiture proceedings. The Supreme Court said that a long time ago. The text of the rule, Rule G-6, doesn't limit when, I mean, all it says is as long as it's after the claim is filed and before discovery is closed, they can serve discovery. So I understand your point about that, but in terms of a discovery rule, you can serve it any time, as long as it's related to the claimant's identity relationship to the property. So I'm kind of using this as more of a discovery dispute, and I understand your argument that may be a little bit unfair. You're putting, you know, front-loading some of these things, but just by the text of the rule, it seems like the government can do this. Yeah, but you know, that, in the real world, that's not what happens. In the real world, what happens is that if you do the Rule G-6 inquiry initially, which the government always does, as the counsel will tell you, and he establishes that he has Article III standing, that Article III standing doesn't go away. It's not like you have to have some further Article III standing, and especially in a case like this. Well, but this is why I think we're having a disagreement or some dissonance in this, because there's Article III standing to keep going in the case. But, I mean, here we're talking, in other words, to keep your client having a presence in these forfeiture proceedings and an ability to object. But that doesn't answer the question of, does your client actually own the $1.1 million in cash that was found in a rental vehicle traveling across an interstate? There's a substantial question as to that. And if it turns out he does not own this, then he doesn't have standing in the true sense, because this is not his money. No, I don't. I think you're conflating standing with the merits issue, and I think that's decided initially, and it's Article III standing. It's not proof of that you're going to win the case. It's only Article III standing. Once you get past Article III standing, then you get into litigation of the case. And what's the first thing you get to do in the litigation of a forfeiture case, according to the U.S. Supreme Court, is you can file a motion to suppress. Fourth Amendment applies to forfeiture proceedings. The U.S. Supreme Court said it a long time ago in 119. No, I mean, clearly you can file a motion to suppress, but I guess what I'm trying to question, how is a district court supposed to sequence these things? And if there are questions about, serious questions about ownership, as there are here, was a district court not permitted to say, let's just have a phased approach where we deal with ownership first, and then if there's enough evidence of ownership to survive summary judgment, then I'll get to the motion to suppress. And I grant you that if the district court did that, it could not rely on evidence that was the subject of a pending motion to suppress. I don't think you could do that. I agree with you on that. I think your question has the answer in it, though. I mean, the sequence is, initial inquiry, first you make a claim, an initial inquiry about Article III standing, you pass Article III standing, then he has a right to file a motion to suppress. That's also in the statutes. That's also in Rule G-8. It's the same CAFRA statute as Rule G-6. It's right underneath Rule G-6. You do Rule G-6 inquiry as to Article III standing, then you can do Rule G-8 motion to suppress. That's how CAFRA was written. I understand the motion to suppress part of it, but doesn't standing and merits merge at some point in time? Because if it can't be proven that your client owns the property, then you lose standing and you lose the case. And so don't they merge at some point in time? And so that begs the question of when in discovery the government can do the special interrogatories. I agree with you, except for the word, you lose standing. I don't think you ever lose standing, but it doesn't make any different. When you get into a merits determination in a forfeiture case, it's a regular battle. It's a civil battle. You do discovery, you do motions to suppress, you do litigation, you do all the stuff that you do in any other civil proceeding, and the government can prevail if they can prove that that's not your money, or they can prove that it's illegal money, or they can prove that drug money, or money from some illegal conduct that justifies this forfeiture. But they have to prove that there's some statute, some law that allows them to forfeit that money. It's either some proceeds from some illegal activity, or it tended to be used for some illegal activity, or illegal in itself, some money laundering, whatever. They've got all kinds of statutes that allow them to forfeit that money. That's a merits argument. So what is your theory for why your client had all this money driving through Nevada legally? What was the question? What is your theory? What theory will you argue that your client was in lawful possession of 1.1 million dollars in cash driving through Nevada in a rental car? I don't mean to laugh about that. It's a really serious question, you know. But the fact is, is that we got so frustrated with the government and the court, frankly, saying that he had to completely answer all this stuff, is that we just ended up using the rule G-6 as general discovery. And he answered all those questions. He indicated that he'd been in the movie industry for 15 years, that he had a legitimate business. He gave them a website that they could inquire as to where he worked and what his business was and everything. He answered all this stuff that he didn't even have to answer, and I, you know, but he did because the court said that he had to keep answering questions that are beyond establishing Article 3 standing. And he did, and he gave them a whole, there's a whole, and you can look in the briefs. He answered a whole bunch of questions about his legitimate business. And there's nothing wrong with his legitimate business, and he says he deals with, in cash, with a lot of his business, as a lot of people do, as a lot of my clients do. And you just, it feels like I have to push up against something that I don't need to push up against about people having large amounts of cash. A lot of people deal with cash. Cash is the realm's currency, you know. There's nothing wrong with cash, and I think that it's improper and unfair to say that just because you have a lot of cash that that should be subject to forfeiture. The government's burden is much heavier than that, and I see that I'm way out of time. Isn't it such a low bar at the beginning to just make a verified claim that you own the cash or the property that's been seized, and that allows you to have standing to begin the action? I mean, I would think that most anyone could actually say they own something that's been seized from them, whether they ultimately can prove it or not. And so, the special interrogatories seem to be able to get at the relationship between the money or the property and the person. And why wouldn't that be permissible at the beginning when it's such a low And especially 99% of the forfeiture cases that we litigate, it's always about money. That's all the government cares about. That's why all these officers on the road are trained at this program called Desert Snow to learn how to interdict people, and they don't even want to interdict drugs. They don't care about that. They want to interdict money. And so, most of these forfeiture cases, and if you look at the title of the cases, they're about the money. But we've some cases of $7 million or cases of $2 million and everything. But the large amount of money is, I think, a hurdle that doesn't need to be crossed. There's no reason to say that because somebody has $1 million in their possession, that that infers that that money is illegal or comes from some illegal source where it's going for some illegal purposes. I think that's unfair. Judicially, it's unfair. Maybe it's a social concept that you can discuss, but judicially, it's unfair. I mean, I don't think anyone's inferring anything other than to say, this may warrant further exploration because it's not something that people normally do. Agree at the right time, and at the right time that they can jump on my client about further explanation is in a merits determination. That's where the battleground is. It's not Article III standing, and it's not special interrogatories. He's passed that barrier, and you should allow him to pass that barrier. That's how the law works. And once he passed that barrier, then everybody puts their gloves on, and it's a nasty battle. And you can fight it out like any other civil litigation. The government can do discovery. We can do discovery. The government can force him to produce anything that justifies his ownership of that money and do all the stuff that you have questions about. Why would somebody have a million dollars? And not just his answers to the special interrogatories, but general discovery where requests for production of documents, of everything to support his claim of that money. But that's not something that happened here because we got cut off of this case at a time when he shouldn't have been cut off, okay? He has a right to pass Article III standing. He has Article III standing, and he has a meritorious motion to suppress that he wants to And you're right. He's got to explain ultimately at trial or at motion for summary judgment the justification for having that much money. You're right, but not at this stage. Not at the stage that he got removed from the case. I think you've exceeded your time because we asked you a lot of questions, so you can have two minutes on rebuttal. Six minutes, so I appreciate the Your Honor, counsel. The district court correctly and properly dismissed Mr. Porcelli's claim under Rule C6CIA and the Federal Rules of Civil Procedure 37A, B, and D. The case law clearly indicates that the judge can sequence it, and since the federal rules, supplemental rules, are part of the Federal Rules of Civil Procedure, Supplemental G1 actually says you can use those Federal Rules of Civil Procedure. There seems to be, and we've intimated this, there seems to be a substantial overlap in forfeiture cases with Article III standing and the actual merits. And in other cases, like a tort case, obviously you have to show Article III standing, but then you could have discovery on damages, causation, etc. But here it seems like if you have an event diagram, they would be almost right on top of each other. I mean, what, as a practical matter, what would you seek discovery on the merits that you couldn't get through Rule G6? A whole lot of things, Your Honor, because Supplemental G, if you saw the excerpt of the record where the supplemental interrogatories were created, at the end of every question, we cited the case law of the Ninth Circuit District Court that said, these are the only questions you can ask. And both 133, 420, and 17 Coonerty. So what categories or what type of information would you seek on the merits that you couldn't do for Article III standing under G6? Under Supplemental G6, according to the case law and the statutes, it says, claimant's identity in relationship to the property, one. Two, purpose to gather information that bears on Percelli's standing. And three, to test the veracity of the claim when he says, I own it and I possess it. We can ask a lot more questions on the discovery in much more detail, but the questions we asked were tailored strictly for... I know, but what, just give me some categories could you serve on the merits that you couldn't do under G6? Under Federal Rules of Civil Procedure, we can go fishing to a certain point. We can ask broad questions and say, provide all this additional stuff, and as long as we show how it relates to the facts, we're able to do this. And so all of those types of questions are much broader. Can you give me an example again? That's the one thing I'm struggling with here, is it seems like if you don't have Article III standing, you can't... It's basically terminus with merits here. Well, just like the FTCA cases, if you do a 12B1 motion under Article III or statutory standing, you have the exact same issue that the court can tailor a set of interrogatories to address solely the standing issue of the plaintiff. And they can determine which of all of those, and they cut everything else just for the purpose of determining Article III standing. The difference is under this procedure, they already created this procedure because as a lot of cases say, it is fraught with false claims being filed in the asset forfeiture area. Why do you think what was brought forward here by Mr. Porcelli was insufficient under our cases at this stage of the proceeding? Because we have cases like 133 million, right? These cases are difficult to remember because they're all different numbers, but that one I do remember, 133. It talks about at a motion dismiss stage, you have to have an assertion of ownership verified. At summary judgment, it can be sufficient to have that plus possession of the funds, which he did here. So why wasn't that sufficient just to then have more discovery on something? Because the court, under the supplemental rules and case law of 133 and 17 Coon Creek Road, it says that we could zero in with these special interrogatories, and we were only asking specifically what his interest in them. Because of his multitude of statements before, where he first said he owned it, he then said he didn't own it, then he said he was an employee of 401 Productions, then he changed his position. This is all during the stop. That's all during the stop. Right, but they say, well, we have a motion to suppress that's either pending or we intend to file, so we shouldn't consider that. Well, the purpose of supplemental G-6 is to determine with all of the statements they've made whether or not it's his. When he on behalf of a production company, I'm no longer the employer, and oh, by the way, I did it, and we keep it covert because Wall Street. Those are factors of telling us that we need to know with sufficient evidence under the supplemental rules to prove that the veracity is it is his money. Let me flesh this out a little bit. A claimant files a verified claim proper on Monday. The government suspects this is drug money and doesn't belong to the defendant. On Friday of that same week, can you file a G-6 special interrogatory asking the claimant to prove his relationship to the money, that he actually owns it? Can you do that? If he's filed the claim, the answer is yes. We can do it. We don't have to wait for mission. Because of the 35 years ago, when I first started here doing forfeitures, a man calls up and says, I filed a claim on this money. My wife won at gambling at one of the casinos and walked away with $250,000. We celebrated that night. Then the next morning, I got up. She'd left and taken everything with me, including the money. So this money is the money that belongs to me that she won. Well, obviously, that isn't even close to the facts of what happened. So we did a supplemental G-6. Oh, no, wouldn't have done it then. It didn't exist. We then moved to force the issue of what is your basis to say it's yours based on what she told, what he told us. Based on the history of this case, the government can at any time zero in to say, show that you have Article 3 standing and statutory standing. And in fact, that's what C-8 says is the purpose of the statutes is this, is to show that you have Article 3 and statutory standing. The answer is because we can zero on that. And again, every question we asked was specific. Their case law of the Ninth Circuit, both in and in some of the district court cases within the Ninth Circuit, gives examples of where the question was too broad and should have been asked in the general one. I can't remember them off the top of my head right now. But if they're outside these very limited parameters, then it should not be. In forfeiture cases, is it the same as in other civil cases that you could serve just normal discovery apart from Rule 6G? We can file the special interrogatories at any time. After the answers come back and we determine whether or not that is and whether he answered the questions, which in this case we clearly say he did not, then we are in the position of doing a scheduling order and we do discovery with 180 days under local rule and the civil rules of civil procedure. So in concrete terms, when would you be able to serve normal discovery? After we met and did the preliminary order for pre-order of discovery, discovery plan. That hasn't happened in this case at all? No, because we never got past the point of the does he have Article 3 in statutory standing? Now the government and the court never ruled at any time whether it had Article 3 standing or not. We were using supplemental G-6 to determine based on the information he gave us. This seems a little different than the hypothetical from your earlier part of your career where somebody is just asserting an ownership interest in some there is some nexus to ownership here, right? That's a little bit different than just some random person coming in saying, oh yeah, that cash that was found in that car, that's mine. When you file a claim as he did, it says if you are a possessor, you have to tell us if there's a bailor because if you're the bailee, you have to... But he says he's a legal owner. I know you dispute that, but I guess the issue to me is how much does he have to come forward with at this point in the proceedings to then get open the door to further discovery on some of these questions? His statement, most of the questions he didn't answer, but his statement which I thought the last one, the last one he submitted said, I earned this money 10 years or before and I ran it through Citibank account. Then he says, the Verness Interrogatory, oh, by the way, I got a lot of cash, but I didn't run it through the Citibank. He did have to deposit the checks that he received in the entertainment business according to him. We're saying that does not tell us your relationship. It does not tell us if it's even your money. It still doesn't tell us because you've already told us in the process that it was somebody else's as an employer and then more importantly, he was transporting money on behalf of somebody else, which by the way, and that's why in the case we independently determined through law enforcement that he didn't have a license to transport money in either state or under FinCEN. Again, all of his stories that we were able to hunt down did not support his position. What I find most interesting also, and I can't resist this is, so I'm not just talking about the amount of money. I'm talking about 10 years or further back, he made this money and all that time he never spent it and when he traveled, he would carry it in a snowboard money, in the snowboard and in his Ms. Penick's passenger's suitcase, which he first said was all his, then said it wasn't his. She said it wasn't, then she said it was her, but she didn't claim any of the money. She didn't know why the money was in there. She didn't pack it. Can we rely on this information that was gleaned from the stop when there's a only for the purpose of deciding that Supplemental G6 should have been used? I don't know whether that's true. We don't know what any of that is true. That's why I said we haven't taken a position in Article 3 standing or statutory standing. Why? Because we use Supplemental 6 to get that information. Let me quote again, the veracity of the claim. So we have a claim that says ownership and possession. His relationship to an identity, he doesn't ever provide that to us and even when he provides a partial, he then takes it away in the next sentence, in the next interrogatory. He then discusses, we also have the ability to purpose to gather information that bears on his standing. That's what we did. He never answered them and make a determination. But that's not why the court dismissed it on Article 3 or Article standing. The court said, I have ordered you to give a full, complete answers. Instead, under the 17 Coon Creek Road and 133-420, they said you have to answer them. So what do you make of some of the language in the 133 million case, right? The, excuse me, 133,000 case. That assertion of ownership combined with the claimant's possession of the currency at the time it was seized would be enough to establish claimant's standing. Would or may be enough. Would be enough. Would be enough. 17 Coon says may be enough. I mean, would be enough, I suppose, without more. But still, what does this, how do you reconcile this language in this case with the position that you're offering here? Oh, I'm glad you asked that one. One second, Your Honor. Let me turn to, there is a distinct answer to this, and I'm going to quote it if I may, Your Honor. In 133-420, it talks about that, in fact, the discovery was beyond. Some of the questions were beyond G6. So if you want to know what questions they are, Your Honor, I will reference to you there's examples of that were beyond the allowed questions. It says, my interest in the defendant property is as the owner and possessor of said property with a right to exercise dominion control over this property. The government filed a motion to strike, not under G6 for failing to answer, but under G8A understanding, Article 3 standing, the statutory standing. That distinguishes it for that purposes. It doesn't distinguish on their explanation of G6. So, approximately on page 637, they say, wait a minute. The government, you brought an action under 8G8C for standing, which is a separate line item of what you can do. You can also bring it under C5 if they did not follow those procedures. But it separately says you can also bring a motion to strike under C6, which is not as to standing, but as to refusing to answer the interrogatories fully. I'm going to go to what I... Can I ask you a question first, counsel? The G6A says that the government may file these special interrogatories. It says, limited to claimant's identity and relationship to the defendant property. Does relationship to the defendant property include proof of ownership? Yes, or possession, to show that he's not the Bailey, because under C5, and again, we go to that to find out the answer to those. He can show possession easily in most of these cases because it's seized from them in a vehicle or whatever. But does that extend to requiring proof of ownership at the G6 special interrogatory stage? Proof of standing of ownership of the property or possessory interest. Because possessory interest is not just if he has the money. Again, in his claim under C5, which we didn't address because we're just trying to find out the information, it says if you have possessory interest, are you a Baylor or Bailey? Because if you're the Bailey, then you must tell us who the Baylor is and that that Baylor has authorized you to defend his money. And that's in C5. To the point I wanted to get to is as you read through on G6, starting in C, you will discover that it's very broadly, again, that it's just not relationship to the property, but it's also veracity of his claim. And the purpose to gather is to be able to determine whether he has Article III standing or statutory standing. They reject two of the arguments that has been presented to you by Mr. Percelli under C. It's approximately page, around footnote 33-34. The government's interrogatories went beyond the scope of Supplemental G6 that he properly objected to them on that basis. Lewis invites us to interpret Supplemental Rule G6A narrowly. What do you think would have been sufficient? What did he have to say to satisfy G6 at this stage? Well, was he a Baylor or Bailey? If he was a Bailey, who's the Baylor? I do not believe people can earn money a decade ago and not spend it for a decade. He does not show us how he got the money. He does not show us what his relationship is to the money, how, and who, and when. And there's case law in the Ninth Circuit and the District Courts of the Ninth Circuit that say that is the purpose of Supplemental G6. We know nothing more today than we did when he was stopped on the road of what his relationship to that money is. He told us numerous stories. He still told us numerous stories, even in the interrogatories. So our answer is the reason why the judge dismissed it under Sanctions Rule 37 is because he never sufficiently provided facts, namely, where did he really get it? He tells us different stories different times, even in the interrogatories. Then he adds things. Then he takes it away. My answer is he needed to provide us what was the relationship. How did he really get the money? The reason why I want to bring this out is, and by the way, again, as he actually talks about the bailer, but I'll just paraphrase it because of time. They give an example, and 17 Coon something road, Coon Creek Road says. Gives an example of a case, and this is what he said. Well, she first said it was hers, and she said it wasn't hers. Then she said in the claim that it was hers. But she then amended and said, oh, by the way, on the claim, and again, that's about her claim, not about- All right, counsel, you've exceeded time, so please wrap up. Okay. All right. She dismissed- I just have one quick follow-up, if I could, before Judge Lee. Why shouldn't, as a matter of procedure, after a verified claim is filed, the court handle the motion to suppress first before the government can test the ownership of the property? Why, as a matter of procedure, isn't that the correct path, which is what the claimant is saying here? Because under Rule 8, if you look at the motion to suppress, it says the court can address it when the defendant shows it has standing. He never gave us sufficiency under C-6 to provide us whether or not he had standing, Article 3 or statute. Well, doesn't the verified claim at the beginning count for initial standing anyway, as opposed to ultimate standing? I'm not sure how we describe that, but- Under the procedure, Supplemental C-6 says the first thing we do, the very first thing we do, the government, if they question standing, is to subdue a supplemental interrogatories. And it says until the supplemental interrogatories are answered, until they are completed sufficiently to be able to address that issue, nothing else occurs. And if, in fact, he provides the information it is supplemental, then we're going to move on to the rest of the documents. If he doesn't, we are going to move under 37 for the sanctions. Switching real quickly to the other area, why did the judge sequence it? Because under Rule 37 of the Federal Rules of Civil Procedure, they actually say the court can sequence the order of things because under Rule 1 of the Federal Civil Procedure, it says the judges are to make sure the economy, efficiency, and the order of things to do as least expensive costs as possible. So in answer to those questions, Your Honor, she did, in fact, correctly and properly dismiss it because he did not answer Supplemental G-8. And her sequence of it gave her full jurisdiction. And in the brief, it talks up quite a bit about cases that, generically, the courts always have ability to control their docket. Thank you. Thank you. You got two minutes. Give me two minutes. And I'm glad that the court brought them up. Okay. First of all, this is not a possessory interest case. My client's not claiming possessory interest. He's claiming ownership interest. So all the rules that apply to somebody who's only claiming a possessory interest are completely irrelevant to this particular case, number one. Number two, when you asked about Rule 8, that Rule 8 about having standing to pursue a motion to suppress doesn't require—it's not about Article 3 standing. Rule 8 is about Fourth Amendment standing. Fourth Amendment standing. That's the whole purpose of Rule 8. It has to do with Fourth Amendment, not Article 3 standing. So I think that that was a kind of confused dialogue that I heard. Statements at the time of the seizure. Make sure I understand that distinction. So you're basically saying he has Fourth Amendment standing because he was in the car? That's all we need to know? Fourth Amendment standing is that you're claiming that there was an illegal search of the car because the government didn't have probable cause to search the car. Right. Okay. But that has almost nothing to do with the ownership of the items that were in the car. That's just saying anybody who has—the driver has Fourth Amendment standing. Correct. In a Fourth Amendment case. It has nothing to do with the ownership of the currency. It has to do with the Fourth Amendment, and that's why it's in Rule 8. Okay? Fourth Amendment standing. Fourth Amendment standing. So you don't have to have some Article 3 standing. Two, statements at the time of the seizure. This court, I think, in the $999,000 case addressed that issue. Okay? Statements addressed at the time of the seizure. First of all, they're just law enforcement officers saying what happened, so they don't even have any relevance to the issues unless you put the person on the stand. But here's what this Ninth Circuit said in the $999,000 case. That evidence is not properly weighed against unequivocal assertion of ownership for determining the issue existence of Article 3 standing. Statements at the time of the seizure are not admissible. They don't have anything to do with the assertion of Article 3 standing, and that's the $999,000 case. Also, there was a Human Rights Commission case that I also litigated, where it says that the district court erred by considering claimants' alleged prior inconsistent statements to negate his assertion of ownership at the pleading stage. So it's improper to bring forth what was said— Wait, what case was that? Human Rights? Uh, that's 825 Appendix 468, Ninth Circuit 2020. Thanks. I think it's in our brief on that. Okay, so— And also, when you're talking about Rule G-6, if you look at the Coon Creek case that was litigated in the Ninth Circuit, it says if a claimant has Article 3 standing, compliance with Rule G-6 is not a standing deficit. So you can't conflate Rule G-6 with Article 3 standing, and that's the problem that the court went through in this particular case. And I think that she was in error, her magistrate judge was in error, to trying to conflate the compliance with Rule G-6 with Article 3 standing. The only purpose of Rule G-6 is to determine whether or not somebody has Article 3 standing. That's what the laws say. That's what the courts say, you know. So also, in the Seventh Circuit, claimants' Rule G-6 response that he owned property undisputedly seized from him sufficient for Article 3 standing and for Rule G-6. So the courts are pretty uniform in saying that, look, if you've got property that's seized from your possession, you've got Article 3 standing, and that basically even satisfies Rule G-6. That's broad. But I think that the court does have a— there is a valid inquiry under Rule G-6, but as I've tried to say to the court, it's only for the purposes of establishing Article 3 standing. That's where Rule G-6 exists. The rest of the battleground is in general civil litigation, and no holds barred, as counsel has indicated. So that's why I'd like to make those points. Thank you for the time, Your Honor. Great. Thank you both for the very helpful argument. That's an interesting case. Case has been submitted.
judges: LEE, BRESS, Tunheim